681 A.2d 1288

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Howard Norman SMITH, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1995.

Decided July 31, 1996.

Linda F. Gerencser, Robert L. Mielnicki, for H.N. Smith, Jr.

Joseph C. Madenspacher, Lancaster, Susan E. Moyer, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

*OPINION*

CAPPY, Justice.

The question before the Court is whether testimony by a nurse wherein she repeated a statement made to her by an injured child identifying the child's alleged abuser was inadmissible hearsay or whether such testimony was properly admitted under the medical treatment exception to the hearsay rule.

The testimony at trial revealed the following. Appellant testified that he was asleep at his home on a couch downstairs. N.T., March 8, 1993, at p. 111. His wife had sent their 5 year old daughter, Priscilla, upstairs to draw Priscilla's bath water. *Id.* The Appellant woke up and started to climb the stairs. *Id.* at 112. The wife heard one scream. *Id.* She ran upstairs to find the Appellant turning on the cold water tap with Priscilla sitting in the tub of hot water, whereupon the wife snatched Priscilla out of the hot water. *Id.* The wife called the paramedics who transported Priscilla to the hospital at approximately 11:00 p.m.

After Priscilla had arrived at the hospital, she was administered two doses of morphine to ease the pains of her scalding burns. N.T. at 73. Around 2 a.m., Nurse Lynn Work started to ask Priscilla questions and Nurse Cindy Ebersole recorded Priscilla's answers to the questions. *Id.* at 97–104. In response to questioning by Nurse Work about what happened, Priscilla responded that Daddy turned on the hot water and daddy put me in the water. *Id.* at 99. Appellant was charged with aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), and brought to trial before a jury. At the trial, the prosecution intended to call Nurse Ebersole. The defense requested an offer of proof. The prosecution stated that Nurse Ebersole would take the stand and repeat Priscilla's statements regarding her father. The defense objected to this as being inadmissible hearsay. The prosecution responded that such testimony came within the medical treatment exception. The trial judge ruled in the prosecution's favor. Thereafter, the prosecution called Nurse Ebersole, who repeated Priscilla's statements

regarding her father. Appellant was convicted of aggravated assault. He appealed to the Superior Court, which affirmed his conviction in a memorandum opinion with one judge finding the statement to be admissible pursuant to the medical treatment exception and one judge finding it admissible because it comported with 42 Pa.C.S.A. § 5985.1, concerning admissibility of children's out-of-court statements regarding sexual abuse. One judge, in dissent, found the statement to be outside the scope of the medical treatment exception.

 The admission of evidence is committed to the sound discretion of the trial court. *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992). Thus, this Court's standard of review is for an abuse of discretion. *Id.* "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co.,* 533 Pa. 441, 448, 625 A.2d 1181, 1185 (1993). With these standards in mind, we proceed to consider the merits of Appellant's claim that the trial court erred in admitting the statements of Nurse Ebersole pursuant to the medical treatment exception.

 To place this discussion in its proper context, we begin by observing that the rule against hearsay is a rule of exclusion, i.e., hearsay is generally not admissible. This is so because a

> hearsay statement lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence. Perhaps such a statement's most telling deficiency is it cannot be tested by cross-examination. According to Dean Wigmore, cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, *supra,* § 1367. Nor is the declarant under oath when the out of court statement is uttered. This court has long recognized the oath requirement as a further assurance of reliability. [citations omitted].

*Heddings v. Steele,* 514 Pa. 569, 573, 526 A.2d 349, 351 (1987). This Court has long recognized that "[t]o insure a party the guarantees of trustworthiness resulting from a declarant's presence in court, a proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted." *Heddings,* 514 Pa. at 574, 526 A.2d at 352. Thus, the burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions. *Carney v. Pennsylvania R.R. Co.,* 428 Pa. 489, 240 A.2d 71 (1968).

One of the rationales which underlie the various exceptions to the hearsay rule is that the circumstances attendant to the out-of-court statement provide sufficient guarantees of the statement's trustworthiness, thus rendering unnecessary the normal judicial assurances of trustworthiness, i.e., cross examination and the oath. John Henry Wigmore, 5 *Wigmore on Evidence,* §§ 1420 & 1422 at pp. 202–03, 204–05 (3d ed.1940). In this regard, Dean Wigmore observed that

[t]he purpose and reason of the Hearsay rule is the key to the Exceptions to it.

The theory of the Hearsay rule ... is that many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by test of cross examination. But this test or security may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation.

*Id.* at § 1420.

Having considered the rule against hearsay and one of the rationales underlying the exceptions to that rule, we can now properly consider the medical treatment exception and the rationale supporting it.

The medical treatment exception to the hearsay rule provides that testimony repeating out-of-court statements which were made for the purposes of receiving medical treat-

ment are admissible as substantive evidence. As early as 1884, this Court stated that "[n]othing is better settled than that statements of a patient to his physician, as to the character and seat of his sensations, made for the purpose of receiving medical advice, are competent evidence...." *Lichtenwallner v. Laubach*, 105 Pa. 366 (1884). *See also Cody v. S.K.F. Industries, Inc.*, 447 Pa. 558, 566, 291 A.2d 772, 776 (1972).

> The law in Pennsylvania ... has been that statements to a doctor were admissible insofar as they were necessary and proper for diagnosis and treatment of the injury and referred to symptoms, feelings and conditions.

*See also* Federal Rule of Evidence (hereinafter "F.R.E.") 803(4).[1] Given these descriptions of the medical treatment exception, it becomes apparent that there are essentially two requirements for a statement to come within this exception. First, the declarant must make the statement for the purpose of receiving medical treatment, *Lichtenwallner v. Laubach*, and second, the statement must be necessary and proper for diagnosis and treatment, *Cody v. S.K.F. See, e.g.*, Gregory P. Joseph et al., *Evidence in America*, Rule 803 at p. 58 (1994):

> Most federal and state courts subject statements proffered under Exception (4) [of F.R.E. 803 or its state counterpart] to a two part reliability test. First, the declarant must have a motive consistent with obtaining medical care. Second, the content of the statement must be such as is reasonably relied upon by medical personnel for treatment or diagnosis.

The common law traditionally excluded statements to physicians as to the cause of an injury (in contrast to statements of symptoms and sensations) from coming in as substantive evidence. *See* Joseph, *Evidence in America*, Rule 803 at p. 57

---

1. F.R.E. 803(4) is the Federal version of the medical treatment exception and provides that the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

(1994)("Statements of cause were excluded as inherently unreliable.") *See, e.g., Cody v. S.K.F.,* 447 Pa. at 566, 291 A.2d at 776 (1972)("statements which related to the cause of the injury were not admissible unless they were part of the res gestae [i.e., excited utterance].") Prior to *Cody,* testimony repeating statements made by patients concerning the cause of the injury were not admissible as substantive evidence. However, *Cody* expanded the law and permitted such testimony regarding the cause of the injury. The law was again extended in *Commonwealth v. Blackwell,* 343 Pa.Super. 201, 494 A.2d 426 (1985), to include testimony repeating statements made to nurses for the purposes of medical treatment and diagnosis.

The second requirement for a statement to come within the medical treatment exception is that the statement be pertinent to medical treatment.[2] Joseph, *Evidence in America,* Rule 803 at p. 58; *see Cody* 447 Pa. at 566, 291 A.2d at 776. By way of example, a person's statement, "I was hit by a car," made for the purpose of receiving medical treatment would come within the exception. It is important for doctors to know how the person sustained the injuries. However, a person's statement, "I was hit by the car which went through the red light," would not come within the exception, or at least that part of the statement which indicated that the car "went through the red light" would not. It is inconsequential and irrelevant to medical treatment to know that the car went through the red light. *See* Federal Advisory Committee Note to F.R.E. 803(4).

Herein, Appellant argues that

[s]tatements regarding the identity of an assailant would not be necessary for treatment of a child's injuries following an incident of child abuse and thus they lack the indicia of reliability generally associated with statements made for the purpose of medical diagnosis or treatment.

The truth is that statements regarding the identity of an assailant or abuser are of legal and not medical significance.

---

**2.** We do not analyze the first requirement for a statement to come within the medical treatment exception because we find it sufficient to dispose of Appellant's claim based on the second requirement.

Appellant's Brief at 11–12. To the extent that Appellant is arguing that the child's identification of her abuser is not pertinent to her medical treatment or diagnosis, we agree.

We fail to see how the identity of the perpetrator of the physical abuse was pertinent to the treatment of Priscilla's scalding burns. What difference would it have made to the treatment of the burns whether a total stranger inflicted the burns or a close family relative? The Commonwealth simply fails to demonstrate that the identity of the abuser is pertinent to medical treatment. *See, e.g., U.S. v. Iron Shell,* 633 F.2d 77, 81–85 (8th Cir.1980), *cert. den.,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)(statements identifying assailant "would seldom if ever" be related to diagnosis or treatment); *State v. Veluzat,* 578 A.2d 93 (R.I.1990)(statement to physician, identifying father as sexual abuser does not help physician to diagnose or treat); *Cassidy v. State,* 74 Md.App. 1, 33–34, 536 A.2d 666 (1988), *cert. den.,* 312 Md. 602, 541 A.2d 965 (1988)("[t]he identity of the person who inflicted the bruises, albeit perhaps of transcendent social importance, is not ordinarily of strictly medical importance"). Binder, *Hearsay Handbook,* § 6.05 at p. 184 ("[t]he general rule is that the identity of a person who inflicts harm on a patient is not reasonably pertinent to diagnosis or treatment of the patient's injuries.") *Contra U.S. v. Renville,* 779 F.2d 430 (8th Cir. 1985) and *Goldade v. State,* 674 P.2d 721 (Wyo.1983), *cert. den.,* 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984).

■ The Commonwealth argues that the statement as to identity of the perpetrator of abuse is of significance for psychological and emotional treatment of the victim as well as for the protection of the child from future abuse. As regards the protection of the child from future abuse, we acknowledge that this goal is of utmost importance; however, this acknowledgement does not make the statements at issue admissible under the medical treatment exception. Protection from future abuse, as such, does not constitute medical treatment or diagnosis.

The Commonwealth's argument that the statement as to identity of a perpetrator is relevant to psychological and emotional treatment of the child is, at first blush, inviting. However, "[a]s a general rule all statements made in this context [of psychological treatment], regardless of their content, are relevant to diagnosis or treatment since experts in the field view everything relating to the patient as relevant to the patient's personality." Weinstein & Berger, *Evidence*, ¶ 803(4)[01]. Thus, were we to accept the Commonwealth's argument, everything said by the patient in the context of being questioned for the purposes of psychological treatment and diagnosis would be admissible under the medical treatment exception. This would destroy the "pertinent to medical treatment" requirement. The Commonwealth's position renders the "pertinent to medical treatment" requirement meaningless as a standard for judicial analysis. "The pertinency standard is intended to impose a true limit." Christopher B. Mueller and Laird C. Kirkpatrick, 4 *Federal Evidence*, § 442 at p. 461 (2d ed.1994).

We find that the Commonwealth's position stretches the medical treatment exception beyond its bounds and causes the pertinency standard to impose no limits. Therefore, we decline to extend the medical treatment exception to statements of identification of an alleged abuser made in this context. Accordingly, the trial court abused its discretion in admitting the nurse's testimony which repeated the child's statement as to the identity of the alleged abuser pursuant to the medical treatment exception to the hearsay rule. As this evidence was admitted erroneously, we are required to vacate the judgement of sentence and remand for a new trial consistent with this opinion.

CASTILLE, J., files a dissenting opinion in which NIX, C.J., joins.

CASTILLE, Justice, dissenting.

The majority here holds that testimony by a nurse wherein she repeated statements made to her by an injured child

identifying the child's alleged abuser cannot be admitted under the medical treatment exception to the hearsay rule because the child's identification of her abuser is not pertinent to the child's medical treatment or diagnosis. Because I believe the statement of a child abuse victim to medical personnel that her abuser is a member of the victim's immediate household presents a vastly different case from that envisioned by the general medical treatment hearsay exception and since I believe that such statements are reasonably pertinent to providing an effective comprehensive regimen of treatment for the totality of the child abuse victim's injuries, I must respectfully dissent.

I agree with the general rule that statements attributing fault are not admissible under the medical treatment exception to the hearsay rule. The general rule banning statements of fault is premised on the assumption that the injury involved is purely somatic. *United States v. Renville*, 779 F.2d 430, 437 (8th Cir.1985). Moreover, as the majority notes, statements identifying the person at fault are seldom needed to promote effective treatment of the injury.

Child abuse, however, is one of the most devastating social ailments afflicting our society and the injuries suffered by an abused child differ dramatically from the types of injuries normally encompassed by the medical treatment exception to the hearsay rule. While most injuries are purely somatic, child abuse cases also often involve deep emotional and psychological injuries. *State v. Nelson*, 138 Wis.2d 418, 434, 406 N.W.2d 385, 391 (1987); *Renville, supra; Goldade v. State*, 674 P.2d 721, 725 (Wy.1983), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984). In order to effectively treat child abuse victims, physicians must be attentive not only to the child's emotional and psychological injuries which result from this crime, but they must also take care to ensure the safety of the child when he or she is released from the physician's care, often back to the abusive situation that gave rise to the original injury. *Renville, supra.* Effective treatment can only be provided for the child's physical and psychic injuries if the physician knows the identity of the abuser,

especially when the abuser resides with the victim. *Nelson, supra.*

Because of the unique circumstances involved in child abuse cases, a number of other states have extended the medical treatment exception to the hearsay rule to situations where the abuse victim makes statements to a doctor or nurse as to the identity of the abuser since such statements are viewed as being pertinent to medical treatment. *See Eakes v. State,* 665 So.2d 852 (Miss.1995) (statement to physician as to identity of abuser of child sexual abuse victim admissible under medical treatment hearsay exception); *Nelson, supra* (child's statement to psychologist that father assaulted her was admissible under medical treatment exception to the hearsay rule); *State v. Vosika,* 83 Or.App. 298, 731 P.2d 449 (1987) (physician who reasonably relied on child sexual abuse victim's identification of her abuser as a family member in treating victim may testify under medical treatment exception as to victim's statement); *Goldade, supra.* (statements by four year old victim to nurse and a physician identifying defendant as abuser were admissible under medical treatment exception). I agree with the rationale behind these decisions and thus, I would extend the medical treatment exception to the hearsay rule to situations like that presented in this case.[1]

1. The majority here supports its decision by looking to the medical treatment hearsay exception contained in Rule 803(4) of the Federal Rules of Evidence and the accompanying Notes of Advisory Committee. Federal Advisory Committee Note to Rule 803(4) explains that hearsay statements as to fault "would not ordinarily qualify" for admission under this rule. While this note speaks in terms of generality, it does not speak in terms of absolute exclusion. Thus, some federal courts have used reasoning similar to the above and allowed a medical professional to testify about statements made by a child as to the identity of her abuser. *See United States v. Tome,* 61 F.3d 1446 (10th Cir.1995) (hearsay statement to physician identifying the identity of a sexual abuser who is a family member admissible under Rule 803(4)); *United States v. Longie,* 984 F.2d 955 (8th Cir.1993) (identity of abuser admissible under Rule 803(4) since such information is particularly important as it affects the physician's treatment and recommendation for counseling); *Renville, supra* (statements by victim to her treating physician identifying her stepfather as her abuser were admissible under the medical treatment exception).

Here, a jury found that appellant abused his five year old daughter by placing her in a tub of scalding water. The treating physician at the emergency room testified that the child's burns led her to believe that the child had been subjected to abuse. The treating physician also testified that the identity of the abuser was an important fact to know in order to protect the child from that person. Moreover, the nurse who testified about the child's statement that her father put her in the tub testified that the child was very frightened, upset and in pain when admitted to the emergency room and that she was concerned for the child's emotional well-being. Based on this testimony, I believe that the nurse's testimony regarding the child's statement as to the identity of her abuser was properly admitted by the trial court under the medical treatment exception to the hearsay rule since it was pertinent to the total treatment of the child's physical and emotional injuries resulting from the father's abusive conduct.[2]

For the reasons stated above, I believe that the testimony of the nurse in this case about the statement made to her at the hospital by a child abuse victim undergoing medical treatment that the abuser was a member of the victim's immediate household was admissible under the medical treatment exception to the hearsay rule because it presents a vastly different

2. The majority, in reversing the Commonwealth Court, only addressed whether the child's statement to the nurse was pertinent to the child's medical treatment. The majority never examined the other requirement of the medical treatment hearsay exception, that is, that the child's motive for making the statement was consistent with obtaining medical treatment. While the child's motive here may not be readily apparent, a young child is generally aware of the emotional and physical pain that she is suffering and is able to comprehend that she is receiving medical treatment to alleviate that suffering. See Nelson, supra at 432–33, 406 N.W.2d at 391 (four year old child understood purpose of sessions with psychologist and thus passed motive prong of medical treatment hearsay exception); United States v. Nick, 604 F.2d 1199, 1201–02 (9th Cir.1979) (statement by three year old to physician as to cause of injury admissible under Rule 803(4) of the Federal Rules of Evidence). Moreover, there is nothing in the record to suggest an ulterior motive for the child to make the statement to the nurse other than to receive medical treatment. Therefore, I believe that record here supports the conclusion that the child's motive in making the statement to the nurse that her father placed her in the hot tub was to obtain medical treatment.

500

case from that envisioned by the general medical treatment hearsay exception and such a statement was reasonably pertinent to effectively treating the child abuse victim. Accordingly, I must respectfully dissent.

NIX, C.J., joins in this dissenting opinion.